1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     Claude M. Stern (Bar No. 96737)
2    Brian Cannon (Bar No. 193071)
     Doug Colt (Bar No. 210915)
3       claudestern@quinnemanuel.com
        briancannon@quinnemanuel.com
4       dougcolt@quinnemanuel.com
   555 Twin Dolphin Drive, Suite 560
5  Redwood Shores, California  94065-2139
   Telephone:    (650) 801-5000
6  Facsimile:    (650) 801-5100

7  Attorneys for Defendant Palm, Inc.

8

9                        UNITED STATES DISTRICT COURT

10                      NORTHERN DISTRICT OF CALIFORNIA

11                            SAN FRANCISCO DIVISION

12                                              | CASE NO. C 067754 SBA
13  HELIO LLC                                   |
                                                | OPPOSITION TO PLAINTIFF'S
14            Plaintiff,                        | APPLICATION FOR TEMPORARY
                                                | RESTRAINING ORDER AND ORDER TO
15       vs.                                    | SHOW CAUSE WHY A PRELIMINARY
                                                | INJUNCTION SHOULD NOT ISSUE
16  PALM, INC.

17            Defendant.

18

19       Defendant Palm, Inc. ("Palm") respectfully submits the following opposition to plaintiff's

20  application for a temporary restraining order and order to show cause re: preliminary injunction.

21  This opposition is supported by the accompanying declaration of Scott Hancock, Palm's Director

22  of Marketing and Communications and the declaration of Doug Colt, counsel for Palm.  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY ..................................................................................1

II. STATEMENT OF FACTS....................................................................................................3

    A. Background ..............................................................................................................3

    B. Development of the Palm Campaign .......................................................................3

    C. Cost and Scope of the Palm Campaign ....................................................................4

    D. Notice Provided by Helio .........................................................................................5

III. DISCUSSION .......................................................................................................................5

    A. A TRO Should Not Issue Because Plaintiff Has Not Demonstrated That It Will Suffer Irreparable Injury ..................................................................................6

    B. A TRO Should Not Issue Because The Balance of Harms Does Not Favor Plaintiff......................................................................................................................7

    C. A TRO Should Not Issue Because Plaintiff Cannot Establish a Likelihood of Success on the Merits............................................................................................8

        1. Strength of the Mark .....................................................................................8

        2. Plaintiff's and Defendant's Marks Are Not Similar......................................9

        3. There Is No Evidence of Actual Confusion of Plaintiff's and Defendant's Marks .......................................................................................10

        4. The Degree of Consumer Care Associated with the Purchase of Palm and Helio Goods Weighs Against Consumer Confusion ....................12

        5. Palm Had No Intent To Associate Its Products with Those of Helio ...........12

    D. The Court Should Order an Expedited Briefing Schedule for a Hearing on a Preliminary Injunction.............................................................................................13

    E. If the Court Enters a TRO, Helio Should Be Required to Undertake a Significant Bond.....................................................................................................13

IV. CONCLUSION ...................................................................................................................13

# I.

## **INTRODUCTION AND SUMMARY**

Helio's papers artificially manufacture the appearance of a crisis in order to justify the extraordinary remedy of a temporary restraining order; this type of gamesmanship on the eve of Christmas week should not be rewarded. More than two months ago, on October 12, 2006, at the major consumer technology tradeshow in New York, Palm publicly launched its holiday advertising campaign that is the subject of Helio's complaint — plaintiff stood by and did *nothing*. More than three weeks ago, Palm launched tens of thousands of outdoor-advertising units throughout the country, including billboards, mass-transit advertisements, and taxi-tops, after expending millions of dollars. Again, plaintiff stood by and did nothing. Yet now, with less than a week before Christmas, knowing that Palm's marketing and legal resources are least available, and without so much as a phone call or a letter requesting a change in Palm's advertising, plaintiff rushes into Court and demands an extraordinary level of relief that would cripple Palm's business during the critical holiday season. Plaintiff's delays in bringing this action and the secrecy under which it prepared its papers speak volumes. If Helio were truly suffering irreparable injury as it now tells the Court, it could have sought relief over two months ago. It did not. At a bare minimum, it could have sent a cease and desist letter to Palm on December 12, 2006, when Helio claims it first "discovered" Palm's international advertising campaign. Again, it did not. The request for TRO is calibrated, instead, to maximize the disruption to Palm, rather than to preserve any status quo.

Moreover, plaintiff's request demands that Palm immediately dismantle an international advertising campaign with more than 20,000 outdoor advertising units–a Herculean task at any time, let alone during the holiday season. This is not a request to preserve the status quo, but to proactively injure Palm on less than 24-hour's notice. This demand is as impractical as it is unjustified.

The campaigns are not confusingly similar. Palm's advertising campaign is focused on its Treo mobile device, which is a well-known mark. Palm's campaign includes the slogan — in highly stylized and distinctive font — "Not just a cell phone. *A Treo*." The Treo is emphasized

and is the centerpiece of the images. Helio, however, in its papers refers only to the first four words of the slogan, completely ignoring the phrase "A Treo" that appears in every single instance of the campaign. Helio's description of Palm's campaign without reference to "A Treo" is fundamentally misleading.

Tellingly, after having months to develop its case and after seeking such an incredible remedy, Helio has not provided a single scrap of evidence to support its claim of "consumer confusion." Plaintiff has not provided a single expert declaration regarding confusion, linguistics, likelihood of harm, market conditions, or other critical issues that it asks the Court to consider. Helio certainly had time to conduct a consumer survey to support its claims of confusion, yet it has provided the Court with no evidence to support its claims. Indeed, plaintiff failed to cite a *single* email, phone call, conversation, or offhand comment from any consumer indicating that Palm's advertising has resulted in any type of confusion. Instead, plaintiff simply relies on blind speculation in seeking to derail Palm's advertising and disrupt sales during the critical holiday shopping season. If plaintiff seeks such an extraordinary remedy, it should be required to provide the Court with substantial, meaningful evidence to support its claims. It has not and a TRO is not justified.

The prejudice to Palm if the TRO is granted would be devastating and far outweighs the comparable harm to Helio of having to wait a short period for a date for a preliminary injunction hearing. Indeed, by plaintiff's own admission, it has lost over $117,000,000 in the past year *alone* and has never made a profit. If an injunction were to issue during the peak holiday shopping season, Palm's losses would be staggering, yet Palm would likely never have any type of damage remedy to recover from Helio, a company that is apparently teetering on the brink of bankruptcy.

Plaintiff itself delayed bringing this action for over two months and Palm should be afforded more than 12 hours to address the complexities of the issues surrounding a $25 million international advertising campaign. Because there are no circumstances that justify the extraordinary remedy of a temporary restraining order and because Helio cannot establish that it will suffer irreparable injury, Palm respectfully requests that the Court deny plaintiff's application and adopt Palm's briefing schedule for a preliminary injunction hearing in mid-January.

## II.

## STATEMENT OF FACTS

A.    Background

Palm, Inc., headquartered in Sunnyvale, California, is a leader in mobile computing that was founded in 1992. (Hancock Decl., ¶ 3.) The company's products include Palm® Treo™ smartphones, Palm LifeDrive™ mobile managers and Palm handheld computers, as well as software, services and accessories. (*Id.*) Palm sells its products through select Internet, retail, reseller, and wireless operator channels throughout the world, and at Palm Retail Stores and Palm online stores. (*Id.*) For nearly 15 years, Palm has developed, supported, and protected a brand that is known worldwide for innovation and quality and since its founding, Palm has shipped more than 34 million mobile-computing products. (*Id.*) The Palm "Treo" trademark was registered with the United States Patent and Trademark Office on August 29, 2001. (*Id.*)

B.    Development of the Palm Campaign

The development of Palm's current advertising campaign (hereinafter the "Campaign"), began nearly two years ago at the beginning of 2005, prior to Helio's existence. (*Id.*, ¶ 4.) At that point, Palm's advertising agency, AKQA first developed the slogan, "NOT A CELL PHONE. A TREO" and presented it to Palm. (*Id.*) At that time, AKQA created 14 advertising mockups that each contained the tagline "not a cell phone. a Treo." (*Id.*, Ex. B.) This tagline provided the foundation of Palm's current advertising slogan, "NOT JUST A CELL PHONE. A TREO." This final language was adopted by Palm in May 2006. (*Id.*, ¶ 4.)

During the Digital Life electronics expo in New York City on October 12, 2006, a significant electronics-industry event, Palm publicly launched the slogan, "NOT JUST A CELL PHONE. A TREO." (*Id.*, ¶ 5.) At the event, Palm displayed a large banner over its exhibition booth with the Campaign slogan. (*Id.*, Ex. C.) Industry journalists covering the event, such as James Miller, acknowledged Palm's new advertising campaign and wrote publicly about the association of the slogan with Palm's new Treo 680 smartphone. (*Id.*, Ex. D.) In an October 12, 2006 publicly-available online article discussing the launch of Palm's new product, Mr. Miller

stated, "To support the roll out of the Treo 680, Palm is going to roll out $25 million advertising and marketing campaign. The main tag line will be 'Not Just A Cell Phone. A Treo.'" (*Id.*)

At no point during the development of the Campaign were Helio's current claims, "Don't call it a phone" and "Don't call us a phone company" ever discussed, considered or raised by Palm. (*Id.*, ¶ 6.) Palm's Campaign was never intended to have any relationship to Helio's current advertising claims, nor was Palm's Campaign ever intended or expected to suggest any relationship between Palm's well-known products and those of Helio. (*Id.*) Palm's Campaign and its original slogan, "not just a phone. a Treo," were conceived prior to Helio's existence, let alone Helio's current advertising campaign. (*Id.*)

C.   <u>Cost and Scope of the Palm Campaign</u>

The slogan "NOT JUST A CELL PHONE. A TREO." is part of a $25 million print, outdoor and online advertising campaign designed to promote Palm's Treo 680 smartphone. (*Id.*, ¶ 8.) The Campaign includes significant expenditures on outdoor advertising through billboards, bus shelters, taxi tops and "wild postings" as well as on print advertising through newspapers and magazines, in both the United States and Europe. (*Id.*) Outdoor advertising was launched on November 27, 2006 and is scheduled to terminate on December 31, 2006. (*Id.*)

Billboard, mass-transit station and taxi-top displays have already been launched in the top 10 advertising markets throughout the United States at a cost of more than $3,500,000. (*Id.*, ¶ 9.) Print has also begun to run, of which approximately $3,500,000 has been spent to date. Palm has also begun using "street teams" that utilize the slogan in New York, Los Angeles and San Francisco. (*Id.*)

All outdoor advertising associated with the Campaign, including billboards, taxi-top displays and mass-transit displays, is scheduled to run only through December 31, 2006. (*Id.*, ¶ 10.) Palm does not intend to run any such advertising beyond that date. (*Id.*)

At a cost of more than $400,000, the Campaign also includes custom-designed and manufactured interactive kiosks, which permit people to select and view category-specific content on larger-than-life Treo smartphones. (*Id.*, ¶ 11.) These kiosks contain a live monitor in place of the Treo screen and are located at bus stops and window fronts in major metropolitan cities,

including Los Angeles, New York, and San Francisco. (*Id.*) At a cost of approximately $2,000,000 thus far, the Campaign also includes significant expenditures on online advertising, including materials on Fandango, Google, The Onion, Orbitz, and Yahoo! (*Id.* ¶12.)

The billboards, taxi top and mass-transit advertising has been posted since November 27, 2006. (*Id.* ¶ 13.) There are over 21,000 of these outdoor units that can not be removed before the scheduled media contract expiration date of December 31, 2006. (*Id.*) Print insertions in weekly publications typically require at least six weeks' notice for removal, depending on the publication. Online publication typically requires at least two weeks' written notice for removal. (*Id.*) The Campaign is not being broadcast on any television stations, and Palm has no plans to do so. (*Id.* ¶ 15.)

D.  Notice Provided by Helio

The first instance in which Helio provided any notice of concern with Palm's Campaign was on December 19, 2006, when plaintiff's complaint and application were sent to in-house counsel for Helio. (*Id.*, ¶ 17.) Helio made no contact with anyone at Palm regarding the Campaign prior to that time. (*Id.*) Outside counsel was not provided with a complete copy of plaintiff's moving papers and declarations until approximately 5:00 p.m. on December 19, 2006.

## III.

## DISCUSSION

"The basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982); *Stanley v. University of So. Calif.*, 13 F.3d 1313, 1320 (9th Cir. 1994). An injunction cannot issue as a matter of course: "In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requesting relief." *Amoco Production Co. v. Village of Gambell, Alaska*, 480 US. 531, 535 (1984). "The critical element" for the Court to consider is the "relative hardship to the parties. If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *State of Alaksa v. Native Village of Venetie*, 856 F.2d 1384, 1389 (9th Cir. 1988).

A.  **A TRO Should Not Issue Because Plaintiff Has Not Demonstrated That It Will Suffer Irreparable Injury**

Here, plaintiff cannot establish that it will suffer irreparable injury that cannot be compensated through legal remedies. Instead of providing this Court with actual evidence that it has or will suffer irreparable injury, plaintiff instead mistakenly cites multiple cases for the proposition that in a trademark infringement claim, a presumption of irreparable injury should arise from a showing of a likelihood of success on the merits. (Application, pp. 11, 12.) Plaintiff fails to address the fact that it waited over two months to bring this action, and the courts have repeatedly held "[l]ack of diligence, standing alone, may...preclude the granting of preliminary injunctive relief, because it goes primarily to the issue of irreparable harm...." *Majorica, S.A. v. R.H. Macy & Co., Inc.*, 762 F.2d 7, 8 (2d Cir. 1985); *see also Tough Traveler, Ltd. v. Outbound Products*, 60 F.3d 964, 968 (2d Cir. 1995) (holding that in trade dress infringement case, delay in seeking preliminary injunctive relief negates any presumption of irreparable harm).

Defendant publicly launched the allegedly infringing slogan on October 12, 2006, at a significant electronics industry event in New York City. (Hancock Decl., ¶ 5.) Now, more than two months after Defendant's initial use of the slogan, plaintiff seeks emergency relief and attempts to claim that it will suffer immediate and irreparable injury if such relief is not granted. Plaintiff's actions speak louder than words and this disconnect cannot be resolved in favor of plaintiff. "'Significant delay in applying for injunctive relief in a trademark case tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement.'" *Majorica*, 762 F.2d at 8 (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985)).

Absent the *presumption* of irreparable injury, plaintiff presents this Court with no evidence to support its claim. Helio had more than two months to develop its case, yet plaintiff has not identified a single consumer who has been confused by Palm's Campaign, nor has plaintiff identified the loss of a single sale as a result of the Campaign. Plaintiff has not provided a single expert declaration regarding market share, loss of sales, loss of profit, loss of goodwill, or any other showing of threatened or ongoing injury. In short, plaintiff provided this Court with nothing

but speculation regarding its claim of irreparable injury and as the Court made clear in *Simula, Inc. v. Autoliv, Inc.* 175 F.3d 716, 725 (9th Cir. 1999), an injunction "may only be granted when the moving party has demonstrated a significant threat of irreparable injury...." There has been no such showing here and a TRO should not issue with the lack of evidence necessary to justify this extraordinary remedy.

B.   <u>A TRO Should Not Issue Because The Balance of Harms Does Not Favor Plaintiff</u>

As above, plaintiff has not provided this Court with evidence to establish that the balance of harms weighs in favor of the issuance of a TRO. Plaintiff has not submitted a single declaration establishing that Helio has lost or will lose customers as a result of Palm's Campaign. Indeed, the only substantive financial information that Plaintiff has provided is the admission that Helio has never earned a profit and in the nine months leading up to September 30, 2006--*prior* to the time that Palm's Campaign even began--Helio lost more that $117,000,000. (Weeks Decl., ¶ 33.) Helio is a company with no profits, no proven track-record, and no reasonable basis to claim that the balance of harms weighs in favor of dismantling Palm's international advertising Campaign during the holiday season.

In stark contrast, the harm to Palm if a TRO were to issue would be devastating. To date, Palm has spent nearly $10,000,000 in deploying advertising as part of the Campaign, including outdoor billboards, mass-transit posters and displays, taxi-top displays, interactive kiosks, magazine inserts, and online advertising. (Hancock Decl., ¶¶ 9-12.) This advertising is widely-distributed throughout the United States and Europe, and consists of more than 21,000 individual outdoor advertising units alone. (Id., ¶ 13.) In short, an attempt to recall this type of advertising would require massive manpower on the ground to pull individual advertisements throughout the country and would result in Palm losing the core piece of advertising it is running during the holiday shopping season which, as plaintiff itself admits is "the most important revenue-generating period in the year for consumer products companies, specifically in the wireless industry." (Weeks Decl., ¶ 41.)

These factors clearly weigh against the issuance of a TRO; on one hand, Helio *might* suffer loss of customers or goodwill, based upon unsupported allegations of confusion and speculative

harm, while Palm *would* suffer significant losses in the form of high costs in attempting to pull all of its advertising, the loss of the advertising itself, and the loss of product sales during the critical holiday shopping season with only a few days remaining before Christmas. Moreover, as Helio itself admits that it lost $117,000,000 in the first three quarters of 2006 alone, Palm would almost certainly have no means to collect any damages if and when Palm prevailed at the time of trial. Faced with speculative harm on one side and immediate, substantial and crippling damages on the other, the balance of hardships tips strongly in favor of Palm and a TRO should not issue.

C. <u>A TRO Should Not Issue Because Plaintiff Cannot Establish a Likelihood of Success on the Merits</u>

Even if Helio could establish that it would suffer irreparable injury and that the balance of hardships favored plaintiff, it cannot establish a likelihood of success on the merits to support the issuance of a TRO. In order to analyze the likelihood of confusion in a trademark infringement case, courts in the Ninth Circuit employ the eight-factor test set forth in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). An analysis of the relevant facts under this test demonstrates that plaintiff has no likelihood of success.

### 1. Strength of the Mark

The first *Sleekcraft* factor for the Court to consider is the relative strength of plaintiff's mark. Plaintiff's papers would lead the Court to believe that Helio pioneered the use of the "not a phone" and "not a phone company" claims in May 2006. A simple Google search, however, reveals that variations of these phrases have been used in reference to different phones, products, and companies, including Palm, for at least the past three years, beginning in 2003. (Colt Decl., ¶ 3.) For example, in a Forbes article dated December 1, 2003, Palm's founder, Jeff Hawkins, stated, "We're not a cell phone company...." (*Id.*, Ex. A.) Nonetheless, Helio now argues that it is the senior user of the slogan "Don't call us a phone company." Because the very phrases over which plaintiff now asserts ownership have been in use for an extended period of time by other companies, including Palm, the strength of plaintiff's alleged marks does not weigh in favor of the issuance of a TRO.

### 2. Plaintiff's and Defendant's Marks Are Not Similar.

The next factor for the Court to consider is the similarity of plaintiff's mark and the allegedly infringing mark. In assessing similarity of the marks under *Sleekcraft*, the Court must consider "the marks and names in their entirety and as they appear in the marketplace...." *Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 444 (9th Cir. 1980). Thus, the Court must examine not only the slogans at issue, but the entire ad campaigns associated with those slogans.

As a threshold issue, plaintiff's and Palm's slogans are simply not similar. Plaintiff's slogans use the phrases "*Don't call it* a phone" and "*Don't call us* a phone company." (Wheble Decl., ¶ 2 (emphasis added).) The statements are intended to *disassociate* Helio's products from phones or phone companies. Plaintiff's slogans are in the form of an imperative, commanding the consumer to think in a certain way. In contrast, Palm's allegedly infringing slogan is "Not just a cell phone. A Treo." Palm's slogan is intended to *associate* the Treo with a cell phone and then inform the consumer that the Palm offers even *more* features than a cell phone. Defendant's slogan is in the form of a declarative statement, defining its product; the two slogans take precisely the opposite approach in talking to consumers. Plaintiff has offered no declaration from a linguist as evidence that Palm's slogan is similar to plaintiff's slogans and even if the slogans convey the same *idea*, namely that the products being offered are different from "a phone," such similarity of idea cannot be the basis for a claim of trademark infringement; only the mark--the specific description of an idea--is protectible under trademark law.

Here, there is no risk of confusion over the expression of the parties' respective ideas. The patent difference between the two slogans is made especially clear by Palm's inclusion of the phrase "A Treo" immediately after the phrase "Not Just a Cell Phone." Thus, it is clear to a consumer that the phrase "Not Just a Cell Phone" does not refer to Helio or any other company, but specifically refers to the Treo. These two phrases are never used separately in Palm's Campaign. (Hancock Decl., ¶ 7.) In an apparent effort to create confusion, plaintiff omits mention of the phrase "A Treo" from its moving papers. As the Court made clear in *Alpha Industries,* 616 F.2d at 444, however, an analysis of the similarity of the marks must be made "as

they appear in the marketplace." When this proper comparison is made, it is clear that the two marks are not similar and that there is no risk of consumer confusion.

Looking at the advertisements as a whole, the differences become even more apparent. Plaintiff's slogan is part of an ad campaign that is featured on internet sites, magazines, newspapers, radio, and television. (Weeks Decl., ¶ 9.) As demonstrated in the exhibits to the Weeks Declaration, every instance of plaintiff's advertisements features the word "Helio" and the color blue. In fact, the color blue is apparently such an integral part of plaintiff's mark that it passed out a "BLUE HELIO" cocktail recipe, even to such well-known celebrities as Justin Timberlake and Cameron Diaz, as part of its branding campaign. (Weeks Decl., ¶¶ 17-18.) In contrast, the color orange forms the backdrop and primary theme behind all of Palm's allegedly infringing advertisements. In each and every example of Palm's advertising shown in the Weeks exhibits, the color orange stands out as the predominant visual element of Palm's ads. Additionally, plaintiff's advertisement features a bold, flame-like object above the word "Helio," while defendant's uses a simple circle around the word "Palm." In short, when the two campaigns are compared as they actually appear in the marketplace, it is clear that two claims come from two very different companies promoting different products; there is simply no evidence to support the notion of consumer confusion or plaintiff's argument that consumers would mistakenly associate the two products together.

3. **There Is No Evidence of Actual Confusion of Plaintiff's and Defendant's Marks**

The *Sleekcraft* court also cited actual consumer confusion as a factor to consider when addressing a claim of trademark infringement. Plaintiff has presented no such evidence. The Weeks declaration references a brand equity study indicating that 61% of the Helio target market associated the "Don't call it a phone" slogan with the idea of "it's not just a phone." (Weeks Decl., ¶ 19.) The study is of course hearsay, and plaintiff has not produced a single declaration--expert or otherwise--identifying the methodology behind the study, the individuals who were surveyed, or any substantive or meaningful detail concerning the study. Most significantly, even if these evidentiary burdens were met, the study does *not* address--let alone prove--plaintiff's claim of

consumer confusion. At best, it addresses association of a certain phrase with plaintiff's products, but certainly does not speak as to any confusion between Helio's advertising claims and Palm's advertising claims.

Having had more than two months to develop its case, plaintiff would certainly be expected to produce evidence of actual confusion if such evidence existed. Helio, for example, has had ample time to conduct a consumer survey in order to demonstrate consumer confusion, yet no such evidence has been provided to the Court. Nor has plaintiff provided a single expert declaration suggesting consumer confusion. In fact, plaintiff has not produced a single declaration, email, letter, phone call, statement, or offhand comment indicating that a single consumer has mistakenly associated Helio with Palm as a result of Palm's Campaign.

The sole piece of evidence that plaintiff provides to justify the claim of "actual confusion" is citation to an article by William Lozito wherein he states "Palm has launched its Treo smartphone campaign under the tagline 'Not just a cell phone. A Treo.' I've noted that Helio is running a similar campaign under the mantra "Don't call us a phone company." (Application, 21:27-23:3.) Far from providing evidence of actual confusion, the article demonstrates a *lack* of confusion. Clearly, Mr. Lozito was able to differentiate Palm and Helio and determine that the two campaigns were *separate* advertisements for *separate* products.

Given the international scope of Palm's Campaign, the fact that Palm's slogan has been in public use for more than two months, and plaintiff's allegations of certain consumer confusion, one would expect plaintiff to provide at least *some* evidence of actual confusion from a consumer, marketing expert, store manager, salesman, phone operator, or any individual with any association with Palm, Helio, or the company's products. Yet there is none. The simple fact is that Helio asks this Court to dismantle a $25 million advertising campaign during the holiday season, based upon nothing more than speculation regarding "consumer confusion." This cannot form the basis of a TRO.

4. **The Degree of Consumer Care Associated with the Purchase of Palm and Helio Goods Weighs Against Consumer Confusion**

Another *Sleekcraft* factor for the Court to consider is the relative care of consumers in differentiating two allegedly similar marks. This not a case involving similar appearing dolls, toys, or other trinkets. Instead, plaintiff and defendant market expensive handheld computing devices that sell for prices of up to $400 As the Court noted in *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1076 (9th Cir. 2006), "Confusion is less likely where buyers exercise care and precision in their purchases, such as for expensive or sophisticated items." Additionally, these devices must be associated with a cellular service provider, thus adding an extra degree of consumer evaluation. Given the time, expense, and care associated with the purchase of Palm and Helio products, there is little risk of consumer confusion.

5. **Palm Had No Intent To Associate Its Products with Those of Helio**

Plaintiff conclusively argues that "Palm has all but admitted that it intentionally chose a slogan that is confusingly similar to Helio's when Palm acknowledged that it was aware of Helio's campaign." (Application, 19:20-25.) Once again, plaintiff cites evidence that does not in fact support plaintiff's preferred proposition. Palm originally developed the "not a cell phone" slogan in January 2005, prior to Helio's existence as a corporation. (Hancock Decl., ¶ 4.) Indeed, in 2003, Palm's founder stated in a Forbes article, "We're not a cell phone company." (Colt Decl., ¶ 3.) With the foundations of the current Campaign laid nearly three years ago, Palm never expected nor intended for its Campaign to have any relationship with Helio's current advertising. (Hancock Decl., ¶ 6.) During the development of its ad campaigns, Palm never discussed or considered plaintiff's slogans. (*Id.*.) Plaintiff's only evidence of intent by Defendant to confuse consumers is the mere speculation of Jessica Weeks, who believes such intent exists based on "the similarity between Helio's and Palm's taglines and Palm's emulation of our marketing and partnership strategy." (Weeks Decl., ¶ 39.) Such speculation is insufficient to demonstrate intent on the part of Palm and likelihood of confusion, especially in light of Defendant's evidence regarding the development of its slogans.

1  D.  The Court Should Order an Expedited Briefing Schedule for a Hearing on a Preliminary Injunction

With Palm's outdoor advertising slated to expire on December 31, 2006, the Court should order an expedited briefing schedule that permits the parties and the Court to address adequately the intricacies of plaintiff's claims and the allegations of consumer confusion. Palm respectfully requests a hearing date on a motion for preliminary injunction on or after January 25, 2007. Given the nature of plaintiff's claims, defendant sees no need for any type of discovery, as plaintiff's claims of consumer confusion would require the administration of a consumer survey along with expert testimony. At a minimum, in the event the Court adopts plaintiff's discovery proposal, Palm should be provided with an equal opportunity to obtain discovery from plaintiff prior to the hearing on a motion for a preliminary injunction. As currently drafted, plaintiff's order provides no such opportunity and only permits plaintiff to obtain expedited discovery.

E.  If the Court Enters a TRO, Helio Should Be Required to Undertake a Significant Bond

As discussed above, Palm would suffer significant losses if a TRO were to issue during the holiday season. These losses would include the cost of removing more than 21,000 outdoor advertisements from locations throughout the country, dismantling electronic kiosks, canceling print and online advertising, canceling in-person product demonstrations, as well as revenues lost from the destruction of Palm's key advertising. Even if a preliminary injunction hearing were held within 30 days, Palm's losses could total in the tens of millions during this time period. Palm therefore respectfully requests that in the event the Court issues a TRO, it require Helio to undertake a bond in the amount of no less than $20M.

IV.

CONCLUSION

For the foregoing reasons, Palm respectfully requests that the Court deny plaintiff's application for a temporary restraining order and adopt an expedited briefing schedule for a hearing on a motion for a preliminary injunction.

| | |
|---|---|
| DATED: December 20, 2006 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP<br><br>By _____<br>Brian Cannon<br>Attorneys for Defendant Palm, Inc. |