QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Claude M. Stern (Bar No. 96737)
  Brian Cannon (Bar No. 193071)
  Doug Colt (Bar No. 210915)
  Andrea Pallios Roberts (Bar No. 228128)
    claudestern@quinnemanuel.com
    briancannon@quinnemanuel.com
    dougcolt@quinnemanuel.com
    andreaproberts@quinnemanuel.com
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California  94065-2139
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

Attorneys for Defendant Palm, Inc.


UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| HELIO LLC | CASE NO. C 06 7754 SBA |
| Plaintiff, | **OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |
| vs. | |
| PALM, INC. | **HEARING DATE:**     April 10, 2007 |
| Defendant. | 1:00 p.m. |
| | **JUDGE:**     Hon. Saundra B. Armstrong |

Defendant Palm, Inc. ("Palm") respectfully submits the following opposition to plaintiff Helio's motion for a preliminary injunction.

# TABLE OF CONTENTS

**PAGE**

I.    PRELIMINARY STATEMENT REGARDING HELIO'S OBSTRUCTION OF
      DISCOVERY ...........................................................................................................1

II.   INTRODUCTION AND SUMMARY ..................................................................1

III.  STATEMENT OF FACTS .....................................................................................3

      A.    Development of the Palm Campaign ..........................................................3

      B.    Notice Provided to Palm and Helio's Alleged First Knowledge of the
            Campaign.....................................................................................................5

      C.    Conduct of Discovery..................................................................................5

      D.    Expert Discovery .........................................................................................6

IV.   ARGUMENT ...........................................................................................................6

      A.    This Motion is Moot Because Palm is No Longer Running the Campaign. ...........6

      B.    Plaintiff Cannot Meet its High Burden to Establish the Need for a
            Preliminary Injunction................................................................................7

            1.    Helio Cannot Obtain Injunctive Relief Because It Has Not
                  Established a Likelihood of Success on the Merits. ...................................7

                  (a)    Factor One:  There is No Evidence of Actual Confusion..................8

                         (i)    Helio Failed to Conduct a Consumer Survey to
                                Demonstrate Likelihood of Confusion ...............................8

                         (ii)   Palm Commissioned a Consumer Survey That
                                Demonstrates That There Is No Consumer Confusion.........8

                         (iii)  Helio Failed to Present any Other Evidence of Actual
                                Confusion...........................................................................9

                  (b)    Factor Two:  Helio's and Palm's Marks are Not Similar................10

                  (c)    Factor Three:  There is No Evidence that Palm Intended to
                         Copy Helio's Campaign. ..................................................................15

                  (d)    Factor Four:  Helio's "Don't Call it a Phone" and "Don't
                         Call us a Phone Company" Marks are Weak. ...............................18

                         (i)    Helio presented no evidence of secondary meaning ..........19

                         (ii)   Palm's survey establishes that plaintiff's marks have
                                no secondary meaning. ......................................................20

quinn emanuel

(e)    Factor Five:  For Plaintiff's Tech-Savvy and Image Conscious Target Market, The Goods and Services Provided by Plaintiff and Palm are Not the Same. .........................................20

(f)    Factor Six:  There is a High Degree of Consumer Care Associated with the Purchase of Plaintiff's and Palm's Goods, Particularly Among Plaintiff's Tech-Savvy and Image Conscious Target Market. ...................................................22

(g)    Factor Seven: The Marketing Channels Used by Plaintiff and Palm Differ. ...............................................................................22

2.    Plaintiff has not demonstrated that it will suffer irreparable injury. ...........24

3.    Plaintiff has not demonstrated that serious questions are raised and that the balance of harms weighs in its favor. ............................................24

V.    CONCLUSION ............................................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

quinn emanuel

-ii-                    Case No. C 06 7754 SBA

OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>Cases</u>

4

AMF, Inc. v. Sleekcraft Boats,
     599 F.2d 341 (9th Cir. 1979)........................................................................ 8, 11, 19, 23

5

Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.,
     616 F.2d 440 (9th Cir. 1980)..................................................................................... 11

6

7

Braun, Inc. v. Dynamics Corp. of America,
     975 F.2d 815 (Fed. Cir. 1992)....................................................................................8

8

Brooks Shoe Mfg. Co., Inc. v. Suave Shoe Corp.,
     533 F. Supp. 75 (11th Cir. 1983)...............................................................................20

9

10

Chesebrough-Pond's, Inc. v. Fabrege, Inc.,
     666 F.2d 393 (9th Cir. 1982).....................................................................................23

11

Claremont Polychemical Corp. v. Atlantic Powdered Metals, Inc.,
     470 F.2d 636 (C.C.P.A. 1972) ..................................................................................10

12

13

Dastar Corp. v. Twentieth Century Fox File Corp.,
     539 U.S. 23 (2003) ...................................................................................................13

14

E. & J. Gallo Winery v. Gallo Cattle Co.,
     967 F.2d 1280 (9th Cir. 1992)...................................................................................23

15

16

Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.,
     198 F.3d 1143 (9th Cir. 1999)...................................................................................19

17

G.D. Searle & Co. v. Chas. Pfizer & Co.,
     265 F.2d 385 (7th Cir. 1959).....................................................................................12

18

19

Genesee Brewing Company, Inc. v. Stroh Brewing Company,
     124 F.3d 137 (2nd Cir. 1997)....................................................................................19

20

Grotrian, Helfferich, Schulz Th. Steinweg, Nachf. v. Steinway & Sons,
     523 F.2d 1331 (2d Cir. 1975)....................................................................................12

21

22

Holiday Inns, Inc. v. Holiday Out in America,
     481 F.2d 445 (5th Cir. 1973).....................................................................................10

23

24

Lebow Bros. Co. v. Lebole Euroconf S.p.A.,
     503 F. Supp. 209 (E.D. Pa. 1980) .............................................................................12

25

Levi Strauss & Co. v. Blue Bell, Inc.,
     778 F.2d 1352 (9th Cir. 1985)..............................................................................19, 20

26

27

Mattel, Inc. v. Azrak-Hamway International, Inc.,
     724 F.2d 357 (2d Cir. 1983).......................................................................................9

28

quinn emanuel

quinn emanuel

Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.,
   856 F.2d 1445 (9th Cir. 1988)...........................................................................7, 26

Northern California Power Agency v. Grace Geothermal Corp.,
   469 U.S. 1306 (1984) .............................................................................................25

Pignons S.A. de Mecanique de Precision v. Polaroid,
   498 F. Supp. 805 (D.C. Mass. 1980) .....................................................................23

Plough, Inc. v. Kreis Laboratories,
   314 F.2d 635 (9th Cir. 1963)..................................................................................12

Postx Corp. v. docSpace Co., Inc.,
   80 F. Supp. 2d 1056 (N.D. Cal. 1999)..............................................................25, 26

Rodeo Collection, Ltd. v. West Seventh,
   812 F.2d 1215 (9th Cir. 1987)....................................................................7, 8, 25, 26

Roselux Chemical Co. v. Parsons Ammonia Co.,
   299 F.2d 855 (C.C.P.A. 1962) ...............................................................................20

Shen Mfg. Co., Inc. v. Ritz Holte, Ltd.,
   393 F.3d 1238 (Fed. Cir. 2004)..............................................................................10

Sierra On-Line, Inc. v. Phoenix Software, Inc.,
   739 F.2d 1415 (9th Cir. 1984).................................................................................26

Spraying Systems Co. v. Delavan, Inc.,
   975 F.2d 387 (7th Cir. 1992)...................................................................................20

Starbucks Corp. v. Lundberg, No. Civ. 02-948,
   2005 WL 3183858 (D. Or. 2005)...........................................................................23

Surfvivor Media, Inc. v. Survivor Productions,
   406 F.3d 625 (9th Cir. 2005)..................................................................................19

U.S. v. Oregon State Medical Society,
   343 U.S. 326 (1952) .................................................................................................6

Webb v. Missouric Pacific Railroad Co.,
   98 F.3d 1067 (8th Cir. 1996)....................................................................................6

Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.,
   419 F.3d 925 (9th Cir. 2005)..................................................................................19

Yurman Design, Inc. v. PAJ, Inc.,
   262 F.3d 101 (2d Cir. 2001)...............................................................................13, 14

Zippo Mfg. Co. v. Rogers Imports, Inc.,
   216 F. Supp. 670 (S.D.N.Y. 1963) .........................................................................20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

quinn emanuel

### Statutes

Fed R. Civ. P. 30(b)(6) ........................................................................................................5

Rule 30(b)(6) .......................................................................................................................6

-v-     Case No. C 06 7754 SBA

OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

# I.
## PRELIMINARY STATEMENT REGARDING HELIO'S OBSTRUCTION OF DISCOVERY

As addressed in Palm's separate March 9, 2007 motion to compel (Docket no. 48), Helio refused to present its key 30(b)(6) witness, Jessica Weeks, to testify for more than 1.5 hours and walked out of the deposition without prior notice. Helio seeks to rely upon Ms. Weeks' declaration to support its motion, but deliberately foreclosed full examination of this witness. Although Palm believes the discovery and consumer surveys conducted to date conclusively show that Helio's mark has no secondary meaning and that there is no likelihood of confusion, Palm is submitting this brief without the benefit of complete discovery, and respectfully requests leave from the Court to submit a supplemental brief following the hearing on Palm's motion to compel.

# II.
## INTRODUCTION AND SUMMARY

In this case for trademark infringement, Helio failed to establish the single most important element of its claim--likelihood of consumer confusion between Palm's and Helio's advertisements. Despite having had more than three months to do so, Helio declined to present any surveys to support its claim of consumer confusion. Palm, on the other hand, at great expense, commissioned two separate studies that conclusively establish the following:

- There is absolutely no evidence of forward or reverse confusion. Of the more than 800 survey respondents from Palm's and Helio's respective target markets, **not a single person** associated Palm's products or advertisements with Helio, or associated Helio's products or advertisements with Palm. This is not a case where Helio has scant evidence to support its claims of confusion; this is a case where Helio has **no evidence** to support its claim of confusion.
- Helio's "Don't call it a phone" slogan has **no secondary meaning**, with only a 13% consumer recognition rate.
- Helio's "Don't call us a phone company" slogan has **no secondary meaning**, with only a 17% consumer recognition rate.

Instead of presenting the most basic evidence, such as a consumer survey, Helio opens its moving papers with an unsupported attack on one of Palm's witnesses and the misguided assumption that this Court's preliminary findings from December's TRO hearing excuse Helio from further developing its claims. But Helio can no longer hide behind a claim of urgency when failing to meet its burden of proof, especially given that Helio has **completed** all of its discovery.

quinn emanuel

1  The evidence developed over the past three months demonstrates that Helio has no case for

2  trademark infringement, and certainly no basis for injunctive relief.

3       In a case for trademark infringement, the single-most important question for this Court to

4  resolve is whether consumers are likely to be confused by Palm's advertisements; fortunately,

5  Helio itself already answered this question more than one year ago.  Through its own admission,

6  Helio is using the phrase, "Don't call it a phone," to convey the message that ███████████

7  ████████████████████████████████████████  In December

8  2005, however -- one year before filing for the TRO against Palm -- both Helio and its advertising

9  agency became aware of a new tagline, "It's so much more than a phone," that was being used by

10  a Helio competitor, ESPN Mobile -- a company that was selling branded phones and phone

11  service.  Despite the word-for-word similarity of this slogan and Helio's intended message, Helio

12  ████████ that its own tagline, "Don't call it a phone" was ████████ to the ESPN slogan.

13  During the same time period, Helio *also* became aware of a slogan being used by Verizon

14  Wireless, "You can do so much more with your phone."  Despite this explicit knowledge of two

15  virtually identical slogans, Helio ████████ that consumers ████████████████ and

16  Helio proceeded to launch its own advertising campaign.

17       In its TRO and preliminary injunction papers, in which Helio is trying to shut down Palm's

18  use of its theme line, Helio never disclosed to the Court its knowledge of the ESPN and Verizon

19  slogans, nor did Helio disclose ████████████████ that the use of "Don't call it a phone" was

20  not likely to confuse consumers.  Yet now, Helio comes before this Court and argues that Palm's

21  theme line, "Not just a cell phone.  A Treo" is likely to confuse the public.  This is hypocrisy at its

22  best.

23       Not only has Helio failed to present any evidence of consumer confusion, Helio's request

24  for a preliminary injunction should be denied because it is moot.  Palm's advertising has run its

25  course.  Palm has no intention of relaunching its campaign.  Helio has presented no evidence of

26  lost sales, lost goodwill, or any type of tangible harm to its business, let alone any ongoing or

27  threatened harm.  In short, there is nothing left of Helio's case that could not be addressed through

28

quinn emanuel

1    monetary damages or permanent injunctive relief at the time of trial.  On this basis alone, the

2    Court should deny the motion.

3         This is a case that should never have been brought, and certainly a case that Helio should

4    have dismissed with prejudice after the evidence overwhelmingly established a lack of consumer

5    confusion and a lack of any good-faith basis for this litigation to continue.

6                                          **III.**
                                 **STATEMENT OF FACTS**

7    A.    Development of the Palm Campaign

8

9         Helio's moving papers would lead the Court to believe that Palm attempted to mimic

10   Helio's advertising campaign.  This is not so.  The development of Palm's "Not Just a Cell Phone.

11   A Treo." campaign (hereinafter the "Campaign"), began over two years ago, in January 2005,

12   before Helio even existed.  (Decl. of Scott Hancock, ¶ 2.)  At that time, Palm's advertising agency,

13   AKQA, developed the theme line, "Not a Cell Phone.  A Treo" and presented it to Palm.  (*Id.*)

14   AKQA created fourteen advertising mockups at that time, each of which contained the theme line

15   "Not a Cell Phone.  A Treo."  (*Id.*, Ex. A.)

16        In early 2006, Palm was completing the development of a new smartphone, the Treo 680,

17   and AKQA began developing a promotional campaign for the product.  (Patterson Decl., ¶ 3; Colt

18   Depo., Ex. 2 - Hancock Depo., 17:1-5.)  As early as April 21, 2006, before Helio launched its

19   "Don't call it a phone" campaign, AKQA delivered a creative brief to Palm, identifying "not a cell

20   phone.  A Treo" as the single-most important element of the campaign.  (Patterson Decl., ¶ 3, Ex.

21   A.)  Palm considered "Not a Cell Phone.  A Treo." along with other potential campaign lines

22   through May 2006 and the early summer.  (Colt Dec., Ex. 1 - Patterson Depo. 32:7-33:8, 52:5-19,

23   96:23-97:2.)

24        The Treo 680 does *not* have an external antenna, and Palm was concerned that if it used the

25   line "Not a cell phone.  A Treo.," some consumers might actually think that the Treo 680 was in

26   fact not a cell phone.  (Colt Dec., Ex. 2 - Hancock Depo., 27:25-28:11; Hancock Decl., ¶ 3.)  By

27   including the word "just" in the theme line, Palm believed that the advertising would convey the

28

quinn emanuel

1   idea that the Treo 680 was a cell phone that *also* had additional features, which was the intended

2   goal of the campaign.  (Hancock Decl., ¶ 3.)

3       In late July, 2006, after the Treo Campaign had been developed, the Palm team at AKQA

4   became aware of Helio's "Don't Call it a Phone" campaign.  (Patterson Decl., ¶ 4.)  In its brief,

5   Helio mischaracterizes the evidence by arguing that AKQA became aware of the Helio campaign

6   "as early as October 2005."  (Motion, 5:20.)  The email referenced by Helio, however, makes no

7   mention of Helio's "Don't call it a phone" slogan, and as Helio is well aware, it had not even used

8   the slogan as of that date.

9       Plaintiff alleges that Scott Hancock, Palm's Director of Marketing, misled the court by

10  stating that Helio's slogan had never been discussed, considered or raised by Palm.  (Motion, 5:1.)

11  Helio has misconstrued the facts.  Mr. Hancock stated that "**at no point during the development**

12  **of the Campaign**" was Helio's slogan considered.  (Hancock TRO Decl., ¶ 6.)  By the time Palm

13  learned of Helio's slogan in August 2006, Palm's Campaign had already been developed and was

14  nearly finalized; at that point, Palm was only considering whether to use the line "Not a cell

15  phone. A Treo." or the line "Not *just* a cell phone. A Treo."  (Davis Decl., Ex. 2 - Hancock Depo.,

16  58:11-19, 71:18-74:12, 77:21-80:2, 82:24-86:3, 100:10-101:10.)  With its concerns about

17  consumers interpreting "Not a cell phone.  A Treo" literally, Palm ultimately decided to include

18  the term "just" in the Campaign, such that the theme line became "Not Just a Cell Phone.  A

19  Treo."  (Hancock Decl., ¶ 3.)

20      Concerned that "Don't Call it a Phone" and "Not a Cell Phone.  A Treo." might convey a

21  similar message -- namely that the product being advertised was *not* a phone -- AKQA notified

22  Palm of Helio's campaign on August 2, 2006.  (Colt Dec., Ex. 1 - Patterson Depo., 42:22-44:10,

23  53:18-54:16; Patterson Decl., ¶ 4.)  Already aware of Palm's concerns over the lack of an external

24  antenna on the Treo 680, AKQA brought the Helio tagline to Palm's attention, as it appeared that

25  Helio's tagline was conveying the message that Palm wanted to **avoid,** namely that a particular

26  device was **not** a phone.  (Patterson Decl., ¶ 4.)

27      In September 2006, Palm publicly launched the Campaign, using the phrase "Not just a

28  mobile.  A Treo." in Europe, and on October 12, 2006, Palm publicly launched the U.S. Campaign

quinn emanuel

1    at the Digital Life electronics expo in New York City, a significant electronics-industry event.

2    (Hancock Decl., ¶ 4.)  Palm displayed a large banner over its exhibition booth with the theme line,

3    "Not Just a Cell Phone.  A Treo."  (*Id.*, Ex. B.)  Industry journalists covering the event, such as

4    James Miller, acknowledged Palm's new advertising campaign and wrote publicly about the

5    association of the theme line with Palm's new Treo 680 smartphone.  (*Id.*, Ex. C.)  Mr. Miller

6    wrote in a publicly-available online article dated October 12, 2006 that, "To support the roll out of

7    the Treo 680, Palm is going to roll out $25 million advertising and marketing campaign.  The main

8    theme line will be 'Not Just a Cell Phone.  A Treo.'"  (*Id.*)

9    B.    Notice Provided to Palm and Helio's Alleged First Knowledge of the Campaign

10          Helio provided no notice of its claims until December 19, 2006, when plaintiff's complaint

11    and application for a temporary restraining order were served on Palm's in-house counsel.

12    (Hancock Decl., ¶ 8.)  Helio made no contact with anyone at Palm regarding the Campaign prior

13    to that time.  (*Id.*)  In its moving papers and in repeated representations to the Court, Helio stated

14    that it first became aware of Palm's campaign on December 12, 2006.  Yet a recently served

15    privilege log reveals that counsel sent an email to Helio on **November 18, 2006, nearly a month**

16    **before the date claimed in Helio's papers,** regarding "Palm/Helio litigation."  (Colt Decl., ¶ 9,

17    Ex. 6, p. 24.)

18    C.    Conduct of Discovery

19          In its January 8, 2007 order denying Helio's application for a TRO, this Court permitted

20    both parties to take two depositions.  Plaintiff noticed the depositions of Scott Hancock and

21    AKQA, Palm's former advertising agency.  Palm noticed the deposition of Helio under Rule

22    30(b)(6).  (*Id.*, ¶ 6, 8.)  In response to this notice, Helio designated three individuals to testify on

23    its behalf.  (*Id.*)  Helio designated Michael Zemetra to testify about "financial information," Jae

24    Lee to testify about "products," and Jessica Weeks to testify about "marketing."  (*Id.*)  The

25    depositions of Messrs. Zemetra and Lee were taken on the same day and completed in five and a

26    half hours total.  (*Id.*)  The deposition of Ms. Weeks began on March 9, 2007.  (*Id.*)  After

27    approximately one and a half hours of testimony, Helio's counsel and the witness walked out of

28    the deposition, contending that Palm was only entitled to seven hours of deposition time for all

quinn emanuel

1  three of Helio's Rule 30(b)(6) designees.  (*Id.*)  That same day, Palm filed an Emergency Motion

2  for to Compel Deposition and Sanctions.  (Docket no. 48.)

3  D.     Expert Discovery

4          To test Helio's claims of consumer confusion, Palm commissioned two separate consumer

5  surveys from Marylander Marketing Research, Inc., a firm with more than 30 years of experience

6  in the design and analysis of consumer surveys.  Palm spent approximately $80,000 on survey fees

7  alone.  As detailed in the two Marylander declarations, the surveys tested a pool of more than

8  1,000 respondents and established that there is absolutely no evidence of confusion between Palm

9  and Helio's advertisements, nor any evidence of secondary meaning for Helio's slogans.

**IV.**
**ARGUMENT**

A.     This Motion is Moot Because Palm is No Longer Running the Campaign.

13          Preliminarily, the Court should deny plaintiff's motion for a preliminary injunction because

14  it is moot; plaintiff has made no showing of a threat of continuing harm.  *Webb v. Missouri Pacific*

15  *Railroad Co.*, 98 F.3d 1067 (8th Cir. 1996) (quoting *U.S. v. Oregon State Medical Society*, 343

16  U.S. 326, 333 (1952) (injunctive relief is inappropriate unless there is "a real threat of [a] future

17  violation [of the law] or a contemporary violation of a nature likely to continue to recur.")  Aside

18  from two print publications that are already slated for publication at the end of March with cover

19  dates of April 2007, the Campaign has run its course.  Palm has no plans to publish any further

20  print advertisements.  (Hancock Decl., ¶ 9.)  There is no outdoor advertising that is still being

21  displayed at the request of Palm, and Palm has no plans to purchase any additional outdoor

22  advertising.  (*Id.*)  While Palm acknowledges that some outdoor advertisements may have

23  remained on display because the owners of the property did not take them down, all of Palm's

24  leases have expired and it is up to the property owners to remove the displays and replace them

25  with new ads.  (*Id.*)  There is no online advertising being displayed at Palm's request, and Palm

26  has no plans to purchase any additional online advertising.  (*Id.*)

27          Not only does Palm have no intention of running any further advertising, the parties and

28  the Court are in the present position of debating over a campaign that has run its course because of

quinn emanuel

plaintiff's delay. In its opposition to plaintiff's application for a TRO, Palm proposed a preliminary injunction hearing on January 25, 2007. (Opp. to TRO, p. 13.) The Court set the hearing date for March 6, 2007. (Docket no. 23.) At Helio's request, Palm stipulated to extending the hearing date and the Court set it for April 3, 2007. (Docket no. 29); (Colt Decl., ¶ 10.) The hearing date was later extended only one week, to April 10, to accommodate Palm's counsel's trial schedule in another matter. (Docket no. 32.) Helio did not object to moving the hearing date, nor did Helio ask Palm to stipulate that the continuance was not to Helio's prejudice. Yet now, plaintiff asks this Court to enjoin Palm from continuing to run a campaign Palm has no intention of running. Without an ongoing or immediate threat of harm, a preliminary injunction is unjustified.

B. Plaintiff Cannot Meet its High Burden to Establish the Need for a Preliminary Injunction

Mootness aside, injunctive relief is an extraordinary remedy that imposes a high burden of proof on the moving party. Here, Helio cannot obtain a preliminary injunction because it has not established either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardships tips sharply in plaintiff's favor. *Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1448 (9th Cir. 1988); *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987). Failure to make such a showing warrants denial of a motion for preliminary injunction. *Miss World*, 856 F.2d at 1448; *Rodeo Collection*, 812 F.2d at 1217.

**1. Helio Cannot Obtain Injunctive Relief Because It Has Not Established a Likelihood of Success on the Merits.**

In a trademark infringement case, the moving party cannot establish probable success on the merits without establishing the fundamental element of likelihood of consumer confusion. *Rodeo Collection*, 812 F.2d at 1220 (affirming denial of motion for preliminary injunction after moving party failed to produce evidence of actual confusion and wrongful intent). To analyze the likelihood of confusion in a trademark infringement case, courts in the Ninth Circuit employ the eight-factor test set forth in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). While Helio argues that the Court initially stated the issue was "close," the discovery obtained

quinn emanuel

1    over the past three months now demonstrates that plaintiff has no likelihood of success on the

2    merits of its claims.

3                    **(a)        Factor One:  There is No Evidence of Actual Confusion.**

4              First and foremost, despite now having had more than three months to develop and

5    investigate this case, Helio has provided the Court with absolutely **no evidence** of actual consumer

6    confusion--not a single survey, not a single email, not a single declaration from one of its

7    salespeople, not a single expert declaration, and not even a single offhand comment by one of the

8    more than 200,000 MySpace "friends" who actively post comments on Helio's homepage.  As the

9    *Sleekcraft* court noted, evidence of actual confusion can be persuasive proof of likely future

10   confusion.  *Id.*, 599 F.2d at 352.  Instead of presenting this Court with evidence of confusion,

11   plaintiff instead relies heavily on case law stating that the lack of such evidence--by itself-- is not

12   dispositive.  (*See* Motion, p. 24-25.)  But plaintiff fails to note that the Court may weigh this factor

13   heavily when the circumstances indicate such evidence *should have been available.  Sleekcraft*,

14   599 F.2d at 352.  This is precisely the case here, as Helio has now had more than three months to

15   develop its case and, at a bare minimum, conduct a survey to test actual consumer confusion.

16                    **(i)        Helio Failed to Conduct a Consumer Survey to Demonstrate
                                   Likelihood of Confusion**

17

18             In a trademark infringement case, it is almost always essential for the plaintiff to introduce

19   survey evidence to support the allegation of a likelihood of confusion.  *Braun, Inc. v. Dynamics*

20   *Corp. of America*, 975 F.2d 815, 828 (Fed. Cir. 1992) ("failure to proffer survey evidence,

21   empirical studies, or disinterested testimony from consumers or members of the trade as to this

22   issue, suggests that the public is not likely to be confused with respect to source"); *Mattel, Inc. v.*

23   *Azrak-Hamway International, Inc.*, 724 F.2d 357, 361 (2d Cir. 1983).  Helio certainly could have

24   conducted a survey in the time since the TRO hearing, and Helio has set forth no justification for

25   its failure to provide this most basic evidence for the Court to consider.

26                    **(ii)       Palm Commissioned a Consumer Survey That Demonstrates
                                   That There Is No Consumer Confusion**

27

28

**quinn emanuel**

OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1    Palm did not sit idle for the past three months, but instead commissioned two separate

2    consumer surveys to test Helio's claims of confusion at a cost of nearly $80,000 in survey fees

3    alone. The results are unmistakable and demonstrate that there is no merit to Helio's case. The

4    survey results are set forth in detail in the attached Marylander declarations, and reveal the

5    following:

6    •    To test forward and reverse confusion, Palm tested a panel of 800 respondents, who
     viewed one of two Helio print advertisements, or one of two Palm advertisements. The
7    panel tested **both** Helio's target market of 18-34 year olds and Palm's target market of 25-
     44 year olds.

8    •    After viewing each advertisement, respondents were asked "Who do you think puts out or
     offers the product(s) and/or service(s) discussed in this ad?"
9
     •    **Not a single respondent** identified Palm or Treo in connection with the Helio ads, **nor did**
10   **a single respondent** identify Helio in connection with the Palm ads.

11   •    Respondents were **also** asked to identify any *other* brands put out by the same company
     mentioned in the ad, or any other brands that *are connected or affiliated with the company,*
12   thus giving them the opportunity to identify **any** type of relationship between Palm and
     Helio.

13   •    **Not a single respondent** linked Palm and Helio.

14   (Marylander Decl.- Consumer Confusion, ¶ 16-53.) As the Court held in *IDV North America, Inc.*

15   *v. S&M Brands, Inc.,* (E.D. Va. 1998), a survey that showed **only a 2.4% confusion rate**, "is

16   persuasive evidence that there is very little likelihood of confusion between the marks here at

17   issue." Here, there is a **0% confusion rate**, clearly establishing the speculative nature of Helio's

18   claim of likelihood of confusion.

19   **(iii)    Helio Failed to Present any Other Evidence of Actual Confusion**

20   Given that Palm's Campaign was introduced in the U.S. in October 2006, and plaintiff

21   alleges that confusion already exists, one would expect plaintiff to present at least *some* evidence

22   of actual confusion from a consumer, marketing expert, salesperson, store manager, phone

23   operator, customer service representative, advertising representative, or any other readily available

24   source. Plaintiff, for example, monitors emails received from consumers and comments posted on

25   YouTube (*see e.g.,* Colt Dec., ¶¶ 11-12, Exs. 7 and 8), yet plaintiff cannot point to a single email

26   or comment demonstrating, or even suggesting, confusion. Similarly, plaintiff boasts about the

27   over 200,000 "friends" it has on MySpace.com, but cannot cite to a single one of the over 13,400

28   comments posted on its MySpace page that indicates any type of confusion.

quinn emanuel

1    The sole piece of evidence cited by plaintiff in support of the claim of actual confusion is

2    an article by William Lozito wherein he states "Palm has launched its Treo smartphone campaign

3    under the theme line 'Not just a cell phone. A Treo.' I've noted that Helio is running a similar

4    campaign under the mantra 'Don't call us a phone company.'" (Motion, p. 24.) This article,

5    demonstrates *lack* of confusion, as Mr. Lozito was clearly able to differentiate between Palm and

6    Helio and determine that the two campaigns were different advertisements for different products.

7    The fact that Mr. Lozito commented that the campaigns are similar is irrelevant; the issue to be

8    tested is whether they are *confusingly* similar. Similar marks that are not likely to cause confusion

9    do not infringe. *See e.g.*, *Shen Mfg. Co., Inc. v. Ritz Holte, Ltd.*, 393 F.3d 1238 (Fed. Cir. 2004)

10   (finding Ritz bath towels and Putting on the Ritz shower curtains not confusingly similar);

11   *Holiday Inns, Inc. v. Holiday Out in America*, 481 F.2d 445 (5th Cir. 1973) (finding Holiday Inn

12   motels and campgrounds and Holiday Out trailer marks not confusingly similar); *Claremont*

13   *Polychemical Corp. v. Atlantic Powdered Metals, Inc.*, 470 F.2d 636 (C.C.P.A. 1972) (finding

14   Duragold bronze pigment and Evergold metal power not confusingly similar).

15                    **(b)    Factor Two: Helio's and Palm's Marks are Not Similar.**

16   The next factor for the Court to consider is the similarity of plaintiff's mark and Palm's

17   allegedly infringing mark. At the TRO hearing, the Court considered this factor to weigh in favor

18   of Helio. Evidence acquired during discovery, however, illustrates precisely how different the

19   marks are. Helio repeatedly misstates the facts by claiming that Palm's theme line is "Not just a

20   cell phone." The **actual** theme line is "Not just a cell phone. A Treo." The two sentences are

21   always presented together in Palm's Campaign, such that any consumer seeing the theme line

22   immediately knows that it refers to the Treo and not to any other product. (Hancock Decl., ¶ 5.)

23   Additionally, Helio mistakenly focuses on the words of the theme lines alone. The marks

24   cannot be evaluated in this type of vacuum; the Court must consider "the marks and names in their

25   entirety ***and as they appear in the marketplace*** . . . ." *Alpha Industries, Inc. v. Alpha Steel Tube &*

26   *Shapes, Inc.*, 616 F.2d 440, 444 (9th Cir. 1980) (emphasis added). When evaluated as they

27   actually appear in the marketplace, the marks are unmistakably different.

28

quinn emanuel

1   "Similarity of the marks is tested on three levels: sight, sound, and meaning." *Sleekcraft*,

2   599 F.2d at 351.  Here, the marks differ significantly on all three levels.  First, with respect to

3   sight, plaintiff's marks are always used with the term "Helio," the distinctive Helio flame, and the

4   predominant use of the color blue.  (*See e.g.*, Weeks Decl., ¶ 9, Ex. B; Colt Decl., ¶ 13, Ex. 9.)  In

5   some cases, the Helio flame is blue and is seen on a white background; in other cases the flame is

6   white and is seen on a blue background.  (Colt Decl., ¶ Ex. 5 - Weeks Depo., 70:13-71:9.)  The

7   color blue is prevalent in Helio's advertising, including "Blue Helio" cocktail drinks, "Blue

8   Rooms" at events, blue backgrounds in clubs, and blue uniforms for store personnel.  (*Id.*, 40:7-22,

9   70:3-71:9, Exs. 1018, 1019, 1022 p. 76-81.)  Documents produced by Deutsch, the advertising

10  agency that developed plaintiff's campaign ███████████████████████████████████████████

11  ███████████████████████████████████████████████████ (*Id.*).  Additionally,

12  plaintiff's advertisements typically feature a picture of a Helio handset, which bears no

13  resemblance to the Treo.  (*See e.g.*, Colt Decl., Ex. ¶ 13, Ex. 9.)

14      In contrast, every Palm advertisement contains the line: "Not Just a Cell Phone.  *A Treo.*"

15  (emphasis added).  The advertisements feature a bright orange background as the predominant

16  visual element.  (Hancock Decl., ¶ 5.)  Ms. Weeks, Helio's 30(b)(6) witness on marketing,

17  admitted that Helio has never used the color orange as anything aside from an incidental color in

18  its "Don't call it a phone" "Don't call us a phone company" campaign.  (Colt Decl., Ex. 5 - Weeks

19  Depo., 46:13-25.)  Palm's advertisements also include the Palm logo, which is a simple circle

20  around the word "Palm," again featuring the color orange.  (Hancock Decl., ¶ 5.)  Finally, except

21  in certain small uses on the internet where space is limited, Palm's advertisements contain a

22  picture of the Treo itself, which bears no resemblance to Helio's devices.  (*Id.*)  A simple side-by-

23  side comparison of the advertisements demonstrates the highly distinctive features of each

24  campaign and the lack of potential consumer confusion.  (Colt Decl., ¶ 14, Ex. 10.)

25      With respect to sound, Helio's marks are very different from Palm's.  Helio's campaign

26  tries to emulate a fun, party atmosphere, whereas Palm's advertising is simple and businesslike.

27  Helio admits that it is targeting young, style-conscious, hip consumers, and the sound of its

28  advertisements reinforces this focus.  (*See* Colt Decl., Ex. 5 - Weeks Depo., 24:18-25:10, Exs.

quinn emanuel

OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1   1022, 1016.)  For example, Helio drafted scripts for radio DJs to read on the air that clearly appeal

2   to the teen market and would be largely indecipherable by anyone over the age of 25.  (*See e.g.*,

3   Colt Decl., ¶ 15, Ex. 11) ("They gave me a jankey phone that looks like a butt.")  Helio's radio

4   advertisements reinforce the young, hipster style of the Helio campaign:

5               Now let me give you all a little piece of advice.  You gotta taste that
                milk before you buy the cow.  And trust me, you are gonna love the
6               sweet cream that flows from this Helio-heiffer

7   (*Id.*, ¶ 16, Ex. 12; *Id.*, ¶ 18, Ex. 14- **CLICK HERE TO LISTEN**.)  Another radio ad, entitled

8   "boy band", featured the lyrics:

9               Girl you got me all tied down.  Now I never get around…..I got
                Google Maps in my pants (Helio!)  In my pants.  In my pants (GPS!)
10

11  (*Id.*, ¶ 17, Ex. 13; *Id.*, ¶ 18, Ex. 14:  **CLICK HERE TO LISTEN**.)  Similarly, Helio's television

12  ads feature a hip, youth-oriented style that reinforces the idea that a Helio should never be called a

13  phone. (Weeks Decl., Ex. C)**.**  In stark contrast to this marketing style, Palm's advertisements do

14  not contain youth jargon, amusing radio spots, or anything aside from a straightforward

15  presentation of the Treo's features and capabilities.

16          Nor do the two lines sound similar to the ear.  "Don't call it a phone" and "Not Just a Cell

17  Phone.  A Treo." do not phonetically sound similar unlike, for example, "Dramamine' and

18  "Bonamine."  *See G.D. Searle & Co. v. Chas. Pfizer & Co.*, 265 F.2d 385 (7th Cir. 1959); *see also*

19  *Grotrian, Helfferich, Schulz Th. Steinweg, Nachf. v. Steinway & Sons*, 523 F.2d 1331 (2d Cir.

20  1975) (finding Steinway and Steinweg pianos to be confusingly similar phonetically); *cf. Plough,*

21  *Inc. v. Kreis Laboratories*, 314 F.2d 635 (9th Cir. 1963) (finding Coppertan and Copa Tan were

22  not phonetically similar to Coca Tan); *Lebow Bros. Co. v. Lebole Euroconf S.p.A.*, 503 F. Supp.

23  209 (E.D. Pa. 1980) (finding Lebow and Lebole were not phonetically similar).  Plaintiff does not

24  present any testimony from a marketing expert, branding expert, or linguist establishing that these

25  advertisements look or sound the same.

26          Finally, the parties' campaigns are different in meaning.  Plaintiff's slogans use the phrases

27  "Don't call it a phone" and "Don't call us a phone company."  The statements are intended to

28  *disassociate* Helio's products from phones or phone companies.  Consumers are specifically told

quinn emanuel

*not* to call Helio devices phones.  Indeed, Helio admits that one of the central themes of its

advertising and business model is that calling a Helio handset a phone is a **social *faux pas***.  (Colt

Dec., Ex. 5 - Weeks Depo., 22:16-24, 28:19-29:24.)  Helio reinforces this mantra through a

number of means, including posting comments on YouTube where it directly tells viewers that

referring to its devices as phones is a *faux pas*, █████████████████████████████████

██████████████████████████████████████████████ and instructing radio DJs not

to call the devices phones.  (*Id.*, 21:25-22:17.)  Helio is so concerned about the use of the word

"phone" in association with its products that it contacted a radio DJ who inadvertently referred to

his device as a "Helio phone" and specifically instructed him to refer to the unit as a "device."

(Colt Dec., ¶ 19, Ex. 15.)  Helio's advertising agency then sent a follow-up email to MTV to make

sure that no one referred to any of the Helio devices as "phones."  (*Id.*)

In stark contrast, Palm's theme line is intended to *associate* the Treo 680 with a cell phone

and then inform the consumer that the Treo offers additional features.  Palm's campaign

specifically refers to the Treo as a phone, a statement that would be anathema to Helio.  Even if

Helio had evidence that the parties' lines convey the same *idea*, namely that their products are

different from "a phone," plaintiff would not be entitled to relief because only a mark, not an idea,

is protectible.  *See Dastar Corp. v. Twentieth Century Fox File Corp.*, 539 U.S. 23, 37 (2003)

(Lanham Act does not protect originality or creativity); *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d

101, 115-16 (2d Cir. 2001).

In its brief, plaintiff argues that marks need not be identical in order to create confusion.

(*See* Motion, p. 17.)  While true, the fact remains that the marks must be similar in *sight, sound,*

*and meaning* for there to be a likelihood of confusion.  In each of the cases cited by plaintiff, the

court found that the terms or phrases at issue were similar in sight, sound, and/or meaning; the

analysis was *not* whether the marks were in fact identical.  Following the same analysis in this

case, there is no likelihood of consumer confusion.

Indeed, plaintiff introduces a red herring by claiming that Palm has "admitted" to the

similarity of the marks; the allegation that AKQA thought the lines were "similar" is a gross

misstatement of the evidence.  As discussed above, when AKQA learned of Helio's campaign, it

-13-

OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

quinn emanuel

1  believed that the Helio slogan conveyed the *idea* that a Helio was **not** a phone, and that the phrase

2  "Not a Cell Phone. A Treo." conveyed the *idea* that the Treo is **not** a phone, which was not a

3  message that Palm wanted to communicate, given the concern about the lack of antenna on the

4  Treo 680. Palm had been debating the theme line for months, and eventually chose the phrase

5  "Not *just* a cell phone. A Treo." because that theme line accurately conveyed the message that (1)

6  a Treo *was* a cell phone and (2) it also had additional features. Helio's claim of "similarity" is

7  meaningless.

8      Indeed, it would appear that Helio is attempting to claim a monopoly over the idea or

9  message behind "Don't call it a phone.", yet Helio's own actions illustrate the hypocrisy of this

10  position. Helio has repeatedly admitted that the single most important message it intends to

11  convey through the use of "Don't call it a phone." is that ███████████████████████████

12  (Colt Decl., Ex. 5 - Weeks Depo., 29:25-30:3, Ex. 1016.) In December 2005, months before

13  launching its campaign, Helio became aware of a new slogan being used by ESPN Mobile, "It's so

14  much more than a phone." (*Id.*, Exs. 1028-1029.) Obviously, this tagline is identical to the

15  message Helio is trying to convey. Yet Helio ██████ that its own tagline ████████ from

16  the ESPN tagline, ██████████████████████████████████████████

17  █████ (*Id.*, 116:15-117:18.) Similarly, Ms. Weeks admitted that Helio ████████████

18  █████ that the Helio tagline ████████ to the tagline for Verizon's VCast, "Your Phone Can

19  Do So Much More." (*Id.*, 118:11-119:21.) Yet now, after concluding that "It's so much more

20  than a phone" and "Your Phone Can Do So Much More" are ████████ "Don't Call it a

21  Phone," Helio comes before this Court and argues that "Not just a cell phone. A Treo." is likely to

22  confuse consumers. Helio's hypocrisy should not be rewarded, especially in light of Helio's utter

23  lack of evidence of any consumer confusion and Palm's conclusive evidence of a *lack* of

24  confusion.

25      Finally, plaintiff argues that the Court must evaluate the strength of Palm's mark so as to

26  gauge whether there is reverse confusion. (Motion, p. 18.) Helio suggests that because Palm is a

27  larger company that Helio, there is "serious danger" that Helio will be overwhelmed by Palm's

28  advertising. The sheer scope of Helio's campaign belies this allegation. When Palm launched its

quinn emanuel

OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1    Campaign, it was described as a $25 million campaign.  In actuality, Palm conducted no television

2    or radio advertising, and ended up spending only $10 million on the campaign.  (Colt Decl., Ex. 2

3    - Hancock Depo., 114:23-115:15.)  In contrast, Helio spent ███████████████████████████

4    ████████████████████████████████████████████████████████████████ (Colt

5    Dec., Ex. 3, Zemetra Depo., 60:9-20.) ██████████████████████████████████

6    ██████████████████████████████████████████████████████████████

7    (Colt Decl., ¶¶ 20-21, Exs. 16-17.)  Palm's holiday campaign could hardly overwhelm Helio's

8    massive advertising bombardment over the last ten months.

9        Helio's arguments regarding reverse confusion are pure speculation unsupported by any

10   evidence and wholly contradicted by the survey evidence obtained by Palm.  If Helio wanted to

11   make a good-faith claim of reverse confusion, it could have conducted a consumer survey.  It did

12   not, and the Marylander survey establishes that there is no evidence of reverse confusion.  Helio's

13   slogans differ greatly from Palm's theme line in sight, sound, and meaning, and Helio has

14   presented no credible evidence to establish a likelihood of consumer confusion.

15                    **(c)     Factor Three:  There is No Evidence that Palm Intended to Copy
                                   Helio's Campaign.**

16

17       Plaintiff has fabricated the story that Palm deliberately chose to use "Not Just a Cell

     Phone.  A Treo." because it was *similar* to plaintiff's campaign.  In actuality, the record is clear

18
     that, if anything, Palm chose its theme line to make certain that it conveyed a *different* message
19
     than Helio's.
20
         The evidence plaintiff "uncovered" during discovery establishes that AKQA first
21
     developed the theme line "Not a Cell Phone.  A Treo." in early 2005, well over a year before
22
     plaintiff launched its campaign.  (Hancock Decl., ¶2, Ex. A.)  As early as April 21, 2006, before
23
     Helio launched its "Don't call it a phone" campaign, AKQA delivered a creative brief, identifying
24
     "not a cell phone.  A Treo." as the potential theme of the campaign.  (Patterson Decl., ¶ 3, Ex. A.)
25
     Palm considered "Not a Cell Phone.  A Treo." along with other potential campaign lines through
26
     May 2006 and the early summer.  (Colt Decl., Ex. 1 - Patterson Depo. 32:7-33:8, 52:5-19, 96:23-
27
     97:2.)  By June 2006, the campaign had been developed, but Palm was still considering whether to
28

quinn emanuel

1    use the line "Not a cell phone. A Treo." or the line "Not *just* a cell phone. A Treo."  (Colt Decl.,

2    Ex. 2 - Hancock Depo., 27:25-28:11; Hancock Decl., ¶ 3.)  As discussed above, the Treo 680 does

3    not include an external antenna, and Palm was concerned that if it used the line "Not a cell phone.

4    A Treo.," some consumers might actually think that the Treo 680 was in fact not a cell phone.

5    (Colt Decl., Ex. 2 - Hancock Depo., 27:25-28:11; Hancock Decl., ¶ 3.)  By including the word

6    "just" in the theme line, Palm believed that the advertising would convey the idea that the Treo

7    680 was a cell phone that *also* had additional features, the intended goal of the campaign.  (Colt

8    Decl., Ex. 2 - Hancock Depo., 27:25-28:11; Hancock Decl., ¶ 3.)

9            The Palm team at AKQA did not become aware of plaintiff's "Don't Call it a Phone"

10   campaign until July 2006.  (Patterson Decl., ¶ 4.)  Plaintiff cites to several documents produced

11   during discovery and claims that these documents establish that Ms. Patterson's testimony that she

12   learned of Helio's campaign in July 2006 is incorrect.  (Motion, p. 5.)  They do not.  First, plaintiff

13   cites to an email dated October 31, 2005 (AKQA 5415).  Plaintiff did not launch its "Don't call it

14   a phone campaign" until May 2006, and this email obviously did not reference the mark in

15   question.  Plaintiff also cites to emails dated ***July 26, 2006***, ***August 2006*** and ***November 2006***, and

16   an undated email, in which the AKQA team referenced Helio's retail stores and partnership with

17   MySpace and received industry news updates featuring articles about Helio.  (AKQA 5220; Davis

18   Decl. Exs. 16-18 and Ex. 23; AKQA 5416.)  Yet, plaintiff fails to explain how these constitute

19   evidence of AKQA's knowledge of Helio's campaign *before* July 2006.  Next, plaintiff cites to an

20   email dated June 27, 2006 (AKQA 5419).  That AKQA referenced plaintiff in an email just days

21   before July 2006 does not establish that Ms. Patterson's testimony was wrong; at most, her

22   recollection was simply off by a matter of days.  Finally, plaintiff cites to industry articles dated

23   May 2006, April 2006, and June 16, 2006 (Davis Decl., Exs. 19-21), yet fails to show that anyone

24   at Palm or AKQA read these articles before late June or early July 2006.  In short, Helio has

25   presented no credible evidence that AKQA was aware of Helio's campaign prior to late June or

26   early July, 2006.

27           Plaintiff further alleges that AKQA was "so uncomfortable" with Palm's use of the

28   "confusingly similar slogan" that it developed other options to the "Not Just a Cell Phone.  A

quinn emanuel

1   Treo." theme line.  (Motion, p. 22.)  This misconstrues the testimony of AKQA.  After learning of

2   plaintiff's campaign, AKQA notified Palm because it was concerned that Palm's "Not a Cell

3   Phone.  A Treo." theme line might convey a similar *message* as plaintiff's campaign, namely that

4   that the Treo 680 was *not* a phone.  (Colt Decl., Ex. 1 - Patterson Depo., 42:22-44:10, 53:18-

5   54:16; Patterson Decl., ¶ 4.)  Helio presents no evidence of ill-intent by Palm.

6          Plaintiff also implies that Palm selected marketing channels based on Helio's campaign.

7   In her declaration supporting plaintiff's application for a TRO, Ms. Weeks testified that Palm ran

8   an advertisement featuring "Not Just a Cell Phone.  A Treo." in Entertainment Weekly just one

9   week after a Helio advertisement appeared in the same magazine.  Magazines, however, require

10  several weeks of lead time to contract to run an advertisement, and it would have been impossible

11  for Palm to observe a Helio advertisement, enter into a contract with Entertainment Weekly,

12  provide advertising copy, and somehow manage to have the ads appear in the very next issue.

13  (Hancock Decl., ¶ 7.)  Indeed, Palm placed the order for the ad on September 26, 2006.  (*Id.*)

14         As alleged evidence of intent, plaintiff further claims that Palm decided to focus on

15  partnering with "passion brands" after plaintiff had allegedly made such partnerships a centerpiece

16  of its campaign.  (Motion, p. 22.)  The "passion brands" plaintiff references include Yahoo,

17  Google, Orbitz, Fandango, and eBay.  (Colt Decl., Ex. 1 - Patterson Depo., 96:3-11.)  These

18  companies are behemoths of the Internet with tremendous viewership and broad, global appeal.

19  They are not niche players and they are among the very first outlets any company would consider

20  for an advertising partnership.  The mere fact that both Palm and plaintiff sought marketing

21  agreements with some of the same leading companies does not establish that Palm intended to

22  copy plaintiff's advertising campaign.  Moreover, plaintiff's citation to Ms. Patterson and Mr.

23  Hancock's deposition testimony is misleading.  At no point did either witness state or imply that

24  plaintiff's partnerships had any bearing on Palm's choice of "passion brands."  (*See* Colt Decl.,

25  Ex. 1 - Patterson Depo., 34:9-35:24, 95:19-96:22, 110:5-111:20; *id.*, Ex. 2 - Hancock Depo., 60:3-

26  20, 62:25-63:4, 66:2-66:14.)  Plaintiff points to a single document, claiming that it establishes that

27  AKQA looked at plaintiff's partnership models for its own partnerships (Motion, p. 22.), but does

28

quinn emanuel

1  not cite to any testimony from AKQA establishing Helio's claimed interpretation of the

2  document.[1]

3       During the hearing on plaintiff's application for a TRO, the parties repeatedly discussed

4  Palm's partnership with the Onion.  The Court evidently considered the Onion to be a non-

5  business oriented publication.  Palm's market research and "MRI scores," a widely used measure

6  to profile the characteristics of a particular publication's readership, however, establish that the

7  Onion is popular with Palm's target audience of 25-44 year-old professionals.  (Colt Decl., Ex. 2 -

8  Hancock Depo., 36:19-37:3.)  Additionally, the Onion provides a website that is optimized for

9  mobile devices, and Palm chose to partner with the Onion for these two reasons.

10      Helio cannot ignore the simple facts.  Palm and AKQA first developed the theme line "Not

11  a phone.  A Treo." in January 2005, before Helio's existence.  By the time Helio launched its

12  advertising, Palm had already largely developed its upcoming campaign and had preliminarily

13  adopted the theme line "Not a cell phone.  A Treo."  The inclusion of the word "just" was intended

14  to make sure that consumers did not believe that the Treo 680 was not a cell phone.  Simply stated,

15  Helio has presented no credible evidence that Palm intended to copy Helio's slogan.

16           **(d)    Factor Four:  Helio's "Don't Call it a Phone" and "Don't Call us a
17           Phone Company" Marks are Weak.**

18      With regard to the strength of mark factor of the *Sleekcraft* test, plaintiff does not introduce

19  any new evidence to support its argument that its marks are strong, but instead relies on this

20  Court's preliminary findings in December that plaintiff's marks have been recognized and

21  associated with its products.  The evidence that Helio presented at that hearing, however, has now

22  been discredited, and further evidence obtained during discovery establishes that plaintiff's marks

23  are most likely generic and, at most, descriptive.

24      Descriptive marks "'define a particular characteristic of the product in a way that does not

25  require any exercise of the imagination.'"  *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk*

26

27      [1]  Plaintiff cites to Exhibit 18 to the Patterson declaration.  No such declaration exists.  Plaintiff is likely referring to the deposition testimony of Ms. Patterson.  Yet, Exhibit 18 to Ms. Patterson's deposition does not mention looking at plaintiff's partnership models.  (Patterson Depo., Ex. 18.)

28

quinn emanuel

*Grove, Inc.*, 419 F.3d 925, 927 (9th Cir. 2005) (quoting *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 632 (9th Cir. 2005)); *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999). They describe "a product's features, qualities or ingredients in ordinary language or describe[] the use to which a product is put." *Genesee Brewing Company, Inc. v. Stroh Brewing Company*, 124 F.3d 137, 143 (2nd Cir. 1997) (internal citations omitted). Descriptive marks will be protected **only** if there is a showing of secondary meaning. *Sleekcraft*, 599 F.2d at 349.

Although likely generic, plaintiff's marks are descriptive at best because they say something about the product's characteristics and do not require any exercise of the imagination to convey Helio's central theme. The message plaintiff tried to convey with its "Don't call it a phone" and "Don't call us a phone company" marks was that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ (Colt Dec., Ex. 5 - Weeks Depo., Ex. 1016.) Helio's own brand equity study confirms that this is the primary message conveyed to consumers. (Colt Decl., Ex. 5 - Week's Depo., Ex. 1023.) In order to qualify for trademark protection, Helio must establish that "a substantial part" of the buying audience attributes "Don't call it a phone." to a single source. *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1354, (9th Cir. 1985). Helio itself has presented no evidence of secondary meaning, and Palm's surveys establish that Helio's slogans have no secondary meaning.

### (i)    Helio presented no evidence of secondary meaning

Plaintiff cites only a brand equity survey "showing 61% consumer recognition." (Motion, p. 21.) This grossly misrepresents the survey results. Helio's survey revealed that when asked "Do you recall ever seeing or hearing any advertising featuring" "Don't call it a phone," ▮▮▮▮▮▮ of *target* consumers in *target* markets answered "yes." (Colt Decl., Ex. 5 - Weeks Depo., Ex. 1023, p. 26.) When ▮▮▮▮▮▮ were asked which company the slogan is for, 62% correctly associated the slogan with plaintiff. (*Id.*) Thus, in reality, ▮▮▮▮▮▮ **those surveyed** correctly associated "Don't call it a phone" with Helio, **not** 61%, as plaintiff claims. (Colt Decl., Ex. 5 - Weeks Depo., 99:20-100:8.) Plaintiff has had ample time to conduct a customized survey on the

quinn emanuel

1   issue of secondary meaning, but has failed to do so.  In contrast, Palm's survey has established that

2   Helio's slogans have no secondary meaning in the marketplace.

3                      **(ii)    Palm's survey establishes that plaintiff's marks have no
                                secondary meaning.**

4

5        Palm commissioned a separate survey to test Helio's claim of secondary meaning, as set

6   forth in detail in the attached declaration of Howard Marylander with the following conclusions:

7   •   The survey consisted of a test pool of 649 respondents in Helio's stated target market of
        18-34 year olds.

8   •   Respondents were shown either the slogan "Don't call it a phone." or "Don't call us a
        phone company." along with two fictitious taglines and the taglines for Verizon Wireless

9       ("Can you hear me now?") and Boost Mobile ("Where you at?").  Thus, respondents were
        exposed to five separate slogans as part of the study.

10

11  •   After accounting for noise (the percentage of respondents who attributed one of the
        fictitious taglines to a single source, the survey revealed "Don't call it a phone." has a
        **secondary meaning of only 13%** and "Don't call us a phone company." has a **secondary**

12      **meaning of only 17%.**

13  •   In contrast, the Verizon tagline, "Can you hear me now?" has a secondary meaning of
        65%.

14  (Marylander Decl.-Secondary Meaning, ¶¶ 1-42.)  As Mr. Marylander concludes, these figures are

15  wholly insufficient to establish secondary meaning for either of Helio's slogans.  *See e.g.,*

16  *Spraying Systems Co. v. Delavan, Inc.* 975 F.2d 387, 394 (7th Cir. 1992) ("While a 50-percent

17  figure is regarded as clearly sufficient to establish secondary meaning, a figure in the thirties can

18  be considered only marginal"); *Brooks Shoe Mfg. Co., Inc. v. Suave Shoe Corp.,* 533 F. Supp. 75,

19  215 (11th Cir. 1983) (2.7% figure considered "de minimus"); (*Zippo Mfg. Co. v. Rogers Imports,*

20  *Inc.,* 216 F. Supp. 670 (S.D.N.Y. 1963) (25% consumer recognition insufficient to establish

21  secondary meaning); *Roselux Chemical Co. v. Parsons Ammonia Co.,* 299 F.2d 855, (C.C.P.A.

22  1962) (10% figure insufficient).  Without establishing secondary meaning, Helio has not

23  established that its marks are entitled to protection.  Even if Helio had made this threshold

24  showing, it has still not demonstrated any likelihood of consumer confusion and the preliminary

25  injunction should be denied.

26                   **(e)    Factor Five:  For Plaintiff's Tech-Savvy and Image Conscious Target
                              Market, The Goods and Services Provided by Plaintiff and Palm are**

27                           **Not the Same.**

28

quinn emanuel

quinn emanuel

1    Plaintiff next argues that the goods and services provided by Helio and Palm are "virtually

2    identical." In reality, there are many important differences between a Treo and a Helio device that

3    the Court should consider when evaluating whether there is a likelihood of confusion.

4    First, plaintiff incorrectly contends that Palm and Helio target the same market. Plaintiff's

5    target market is not simply "young people," but three subgroups: the "Feed Me," "See Me," and

6    "Spoil Me" segments. They are 18-34 years old and are "in-the-know hipsters, influencers, culture

7    junkies." The "Feed Me" segment are "affluent, young adult lead users and early trend seekers in

8    technology and cell phones;" the "See Me" segment are "multi-ethnic urban dwellers willing to

9    spend on technology, trendsetters;" and the "Spoil Me" segment are "students with heavy

10   entertainment and communication needs; seeking 'cool' image and features." (Colt Decl., Ex. 5 -

11   Weeks Depo., 24:18-25:10, 32:8-14, 61:3-13, Ex. 1022 pp. 48, 50-52.) These segments do not

12   reflect typical Palm customers; indeed, Helio's own brand equity survey revealed that **only 1%** of

13   Helio's target market currently owns a Palm product, as compared to more than 30% who own a

14   Motorola product, for example. (Colt Decl., Ex. 5 - Weeks Depo., 101:3-12, Ex. 1023 ). Helio

15   admitted that it is unaware of any information to suggest that more than 1% of its target market

16   currently owns a Palm product. (*Id.*).

17   The members of each of the groups targeted by Helio are, by definition, knowledgeable

18   about technology. They are also "in the know" when it comes to fashion and trends. To them, a

19   Helio is a fashion-badge and an identifier of their own personalities. (*Id.*, 32:8-33:1, Exs. 1016,

20   1022.) The services and functions provided by Helio are focused on providing entertainment and

21   keeping members connected with their friends. Unique Helio features include MySpace Mobile

22   integration, Helio's GPS enabled "Buddy Beacon" (a feature that allows friends to track the

23   location of other friends, and heavily promoted by Helio for meeting up at clubs and parties),

24   H.O.T. ("Helio On Top"), a real-time sports and news ticker, stereo sound, a 2 megapixel camera,

25   over-the-air music downloads, and 3D games. The Palm Treo 680 cannot match these technical

26   capabilities and the tech-savvy consumers that Helio targets are acutely aware of the unique

27   features that set Helio apart from others in the marketplace. (*Id.*, 24:18-25:10, Exs. 1016, 1022.)

28

1  Moreover, the Treo features a QWERTY keyboard--not offered by Helio--and has no physical

2  resemblance to any of Helio's devices.

3      Not only are Helio devices and Palm phones very different pieces of technology, Helio

4  exists in an entirely different class, as Helio is actually a cell phone service provider.  Palm is not.

5  (*Id.*, 58:18-20.)  Helio's unique features are tightly integrated into Helio's network such that a

6  Helio device **cannot be used** on any other provider's network, nor can any non-Helio device, such

7  as Palm Treo, be used on the Helio network.  (*Id.*, 58:15-17, 60:13-22.)  The features that are

8  unique to Helio, such as the Buddy Beacon and H.O.T., can only be utilized on the Helio network.

9      Additionally, Helio introduces another misconception by arguing that Helio sold and

10  supported Treo devices, which may lead to confusion.  (Motion, p. 23.)  This is a

11  misrepresentation of fact; Earthlink Wireless, *not* Helio, has sold and supported Treo devices.[2]

12  (Colt Decl., Ex. 5 - Weeks Depo., 42:17-48:10.)  Ms. Weeks admitted that with the exception of a

13  single email that was sent to Earthlink Wireless subscribers announcing the launch of Helio and

14  offering them a discount on Helio devices, Earthlink Wireless and Helio have never been

15  promoted together.  (*Id.*)  Of course, plaintiff only speculates that this relationship causes

16  confusion and has produced no evidence of any confusion from Earthlink Wireless subscribers.

17          **(f)    Factor Six:  There is a High Degree of Consumer Care Associated with
             the Purchase of Plaintiff's and Palm's Goods, Particularly Among
18           Plaintiff's Tech-Savvy and Image Conscious Target Market.**

19      This is not a case about dolls, toys, or other insignificant trinkets that consumers purchase

20  while impulse shopping.  The products and services at issue are high-end cellular devices that

21  come tethered to lengthy and expensive service contracts.  Indeed, by Helio's own admission, its

22  target market is tech-savvy and image conscious.  (Colt Decl., Ex. 5 - Weeks Depo., 24:18-25:10,

23  32:8-14, 60:5-9, Exs. 1016, 1022.)  Moreover, Helio itself notes that its target customers are

24  purchasing Helio devices as fashion accessories that are a badge of personality.  (*Id.*)

25

26  _____

27      [2]   On Information and belief, Earthlink Wireless and Helio are owned by the same parent company.  A contract
    is still in place to permit the sale of Palm devices, but none have been sold, presumably because Palms do not appear
28  to Helio's target demographic.

quinn emanuel

1    The cost of Helio's service further establishes the high level of consumer care in this case;

2  the more expensive the product, the higher the degree of care exercised by consumers.  *Sleekcraft*,

3  599 F.2d at 353; *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1293 (9th Cir. 1992);

4  *Chesebrough-Pond's, Inc. v. Fabrege, Inc.*, 666 F.2d 393, 398 (9th Cir. 1982).  Simply stated,

5  Helio's services are expensive.  For example, the "all-in" plan with 1000 daytime minutes is $85

6  per month.  (*See* www.helio.com.)  This does not include any content that the user downloads,

7  such as music or videos.  (Colt Decl., Ex. 4 - Lee Depo., 20:3-21:16.)  Indeed, Helio's monthly

8  average revenue per user is ███████████████████████ (*Id.*, Ex. 5 - Weeks

9  Depo., 102:3-9.)  In addition, as with most networks, almost all users have to sign a standard two-

10  year contract in order to obtain Helio's services.[3]  (*See* http://www.helio.com/page?p=terms.)  The

11  fact that a consumer has to enter into a contract that will potentially cost more than $2500 over a

12  two-year period certainly suggests a high level of consumer care.  *See e.g.*, *Pignons S.A. de

13  Mecanique de Precision v. Polaroid*, 498 F. Supp. 805, 813 (D.C. Mass. 1980) (finding Polaroid

14  users exercise a high degree of care because cameras are over $100 and the users "appreciate

15  precision machinery and technology.")

16    Finally, Plaintiff argues that Palm's Campaign creates "initial interest" confusion, citing

17  *Starbucks Corp. v. Lundberg*, No. Civ. 02-948, 2005 WL 3183858 (D. Or. 2005).  Plaintiff alleges

18  that even if consumers eventually distinguish between the two companies, they will show an initial

19  interest in Palm because of its "misappropriation of the sight, sound and meaning" of Helio's

20  marks.  (Motion, p. 24.)  Reliance on *Starbucks*, however is misplaced.  In that case, the court's

21  finding of initial interest was based upon survey evidence showing a percentage of customers who

22  were initially attracted to "Sambuck's" due to its similarity to "Starbucks'" name.  *Id.* at *6.

23  Plaintiff submitted no such evidence to support its claim of initial interest confusion.

24    **(g)    Factor Seven: The Marketing Channels Used by Plaintiff and Palm Differ.**

---

27    [3]  The single known exception is for MySpace users, who can download a coupon permitting them to purchase Helio services on a month-by-month basis.

1    Plaintiff alleges that the marketing channels used by Helio and Palm are "identical."  Once

2   again, Helio misconstrues the facts.  There is some overlap in marketing, but that overlap only

3   occurs in the mainstream media.  Helio's focus on young, trendy consumers drives the differences

4   between the two parties' marketing channels and a closer examination of the two campaigns

5   reveals the disparity between the marketing channels chosen by Palm and Helio.

6    First and foremost, Palm did not run its campaign on television or radio, whereas these

7   outlets constituted a major component of Helio's ██████████ campaign.  (Hancock Decl., ¶ 6.)

8   Helio ran its commercials on MTV, MTV2, mtvU, Adult Swim, Fuse, Spike, Logo, G4, VH-1,

9   Comedy Central, BET, E!, ESPN, and ESPN2, all of which are geared to Helio's target market of

10  young, hip, tech-savvy consumers.  (Colt Decl., Ex. 5 - Weeks Depo., 54:14-16, 55:13-16.)

11  Similarly, Helio advertised only on alternative and contemporary rock stations.  (*Id.*, 38:13-19.)

12   Helio's print campaign was featured in Rolling Stone, Spin, Details, Entertainment

13  Weekly, GQ, Blender, Lucky, Res, Nylon, Blackbook, Filter, Soma, Flaunt, Mean, Giant, The

14  Fader, Out, Swindle, and Wired.  (*Id.*, 53:23-25, 55:4-8, Ex. 1021.)  As with the television and

15  radio outlets, these magazines were selected based upon their appeal to Helio's target audience.

16  The only overlap cited by plaintiff consists of popular, mainstream magazines such as Rolling

17  Stone and Entertainment Weekly.  (Hancock Decl., ¶ 6.)

18   There is similarly almost no overlap between Helio's and Palm's online advertising.

19  Helio's advertisements are run on Yahoo, MySpace, AOL, Game Spot, IDG Entertainment, IGN,

20  Interevco, Heavy, PlanetOut, MSN, Massive, CNET, Wired, PCMag, PC World/MacWorld, SEM,

21  and Atlas Commission.  (Colt Decl., Ex. 5 - Weeks Depo., 54:1-9, Ex. 1021.)  The only websites

22  where the campaigns overlapped were mainstream sites such as Yahoo and other similar mass-

23  media.  (Hancock Decl., ¶ 6.)Both companies ran outdoor advertising, but plaintiff's outdoor

24  advertising was aimed at locations ████████████████████████████████████

25  ██████████████████████ (Colt Decl., ¶ 22, Ex. 18.)  This is consistent with Helio's focus on

26  providing entertainment to its audience, rather than business needs.  In contrast, Palm's outdoor

27  advertising on highly-trafficked areas.  (Hancock Decl., ¶ 6.)

28

quinn emanuel

OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1    Finally, Helio promoted its goods and services in several unique channels not used by

2  Palm.  For example, Helio sponsored events at nightclubs with celebrities in attendance.  (Colt

3  Decl., Ex. 5 - Weeks Depo., 38:20-40:6.)  Helio sponsored concerts and art shows, including a

4  concert by the band "Panic at the Disco."  (*Id.*, 41:2-22.)  Helio used college representatives to

5  promote their devices on college campuses.  (*Id.*, 43:21-23.)  And finally, Helio also opened a

6  small number of retail stores in locations frequented by young people and designed them like

7  lounges, providing patrons with a "hang out."  Palm did not use any of these tactics.  Contrary to

8  plaintiff's allegations, there is remarkably little overlap between the parties' marketing channels.

9        **2.    Plaintiff has not demonstrated that it will suffer irreparable injury.**

10    Plaintiff relies heavily on the presumption of irreparable harm that arises if a moving party

11  in a trademark infringement case shows a likelihood of confusion.  (*See* Motion, p. 13); *Rodeo*

12  *Collection*, 812 F.2d at 1220.  No such showing has been made here.  *Id.* (concluding the

13  presumption of irreparable harm was not applicable because the moving party did not establish

14  likelihood of confusion).  Where the moving party fails to show a likelihood of confusion, it must

15  make an *independent* showing of irreparable harm.  *Postx Corp. v. docSpace Co., Inc.*, 80 F. Supp.

16  2d 1056, 1064 (N.D. Cal. 1999).  In doing so, the moving party must establish that it does not have

17  an adequate remedy at law.  *Northern California Power Agency v. Grace Geothermal Corp.*, 469

18  U.S. 1306, 1306 (1984).

19    Here, plaintiff has made no effort, independent of the cited presumption, to show

20  irreparable harm.  After having three months to develop its case, plaintiff still has not identified a

21  single consumer who has been confused by the Campaign, nor identified the loss of a single sale

22  as a result of the Campaign.  Plaintiff has not provided any expert testimony regarding market

23  share, loss of sales, loss of profit, loss of goodwill, or any other showing of threatened or ongoing

24  injury.  Plaintiff's claim of harm is nothing more than speculation.

25        **3.    Plaintiff has not demonstrated that serious questions are raised and that the**
            **balance of harms weighs in its favor.**

26

27    Because Helio has not established a likelihood of success on the merits or the threat of

28  irreparable harm, it has no choice but to argue that this case raises serious questions *and* that the

quinn emanuel

1  balance of harms tip sharply in Helio's favor.  *Miss World*, 856 F.2d at 1448; *Rodeo Collection*,

2  812 F.2d at 1217.  This high burden has not been met.  A "serious question" is one as to which the

3  moving party has "a fair chance of success on the merits."  *Sierra On-Line, Inc. v. Phoenix*

4  *Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).  Where, as here, a plaintiff in a trademark

5  infringement case does not show a fair chance of success on the merits, i.e. a likelihood of

6  confusion, "serious questions" have not been raised.  *Postx Corp.*, 80 F. Supp. 2d at 1064.

7  Moreover, plaintiff makes no attempt to show that the balance of hardships weighs in favor of

8  issuing a preliminary injunction.  With over three months to develop its case and gather evidence

9  of confusion, plaintiff cannot now rely on speculation in an attempt to justify injunctive relief.

10
**V.**
**CONCLUSION**

11

12       For the foregoing reasons, Palm respectfully requests that this Court deny plaintiff's

13  motion for a preliminary injunction.

14  DATED:  March 20, 2007           QUINN EMANUEL URQUHART OLIVER &
                        HEDGES, LLP

15

16                        By /s/  Claude M. Stern

17                          Claude Stern
                        Attorneys for Defendant Palm, Inc.

18

19

20

21

22

23

24

25

26

27

28

quinn emanuel